UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.:

SECURITIES AND EXCHANGE COMMISSION,  :
:
            Plaintiff,  :
:
v.  :
:
ANDRES FERNANDEZ and  :
EDISON DENIZARD,  :
:
            Defendants.  :

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission alleges:

**I.    INTRODUCTION**

1. From 2015 through 2017, defendant Andres Fernandez, through companies he controlled, raised approximately $20.7 million from at least 56 investors in an unregistered fraudulent securities offering.

2. During this same approximate time frame, defendant Edison Denizard, through a company he controlled, raised approximately $10.4 million from at least 78 investors in an unregistered fraudulent securities offering.

3. Defendants falsely represented to prospective investors that their money would be used to produce and promote concerts at major venues by prominent musicians, which Fernandez would manage. In fact, Defendants each misappropriated more than $1 million of investor money for their own use, and they operated Ponzi schemes, using new investor money

to make payments to earlier investors.  The small portion of the money used for concerts involved lesser-known artists at small venues.

4. By engaging in this conduct, Defendants violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.  Unless enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

## II. DEFENDANTS AND RELATED ENTITIES

### A. Defendants

5. Fernandez, 38, resides in Orlando, Florida.  At all relevant times, Fernandez was the principal of Kadaae, LLC ("Kadaae") and Kadaae Entertainment Corp. ("Kadaae Entertainment" and, collectively with Kadaae, the "Kadaae Companies").  On August 20, 2019, the United States District Court for the Middle District of Florida accepted Fernandez's guilty plea to twelve counts of wire fraud in connection with the scheme to defraud investors in the Kadaae Companies.  *United States v. Fernandez*, No. 6:19cr8 (M.D. Fla.).

6. Denizard, 39, resides in Orlando, Florida.  At all relevant times, Denizard was the principal of Ahead of the Game, LLC ("AOTG").

### B. Related Entities

7. Kadaae is a Florida limited liability company formed by Fernandez in April 2012 with its principal place of business in Orlando, Florida.  Kadaae is now defunct and its corporate status was administratively dissolved in September 2018.

8. Kadaae Entertainment is a Florida corporation formed by Fernandez in February 2015 with its principal place of business in Orlando, Florida. Kadaae Entertainment is now defunct and its corporate status was administratively dissolved in September 2018.

9. AOTG is a Florida limited liability company formed by Denizard in March 2015 with its principal place of business in Orlando, Florida. AOTG is now defunct and its corporate status was administratively dissolved in September 2018.

### III. JURISDICTION AND VENUE

10. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act , 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a), and Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

11. This Court has personal jurisdiction over the Defendants, and venue is proper in the Middle District of Florida, because Defendants reside in this district and because many of the acts and transactions constituting violations of the Securities Act and Exchange Act occurred in this district.

12. In connection with the conduct alleged in this Complaint, Defendants, directly and indirectly, made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails.

### IV. DEFENDANTS' ACTS IN VIOLATION OF THE SECURITIES LAWS

**A. The Securities Transactions**

13. Prior to 2015, Fernandez, through Kadaae, provided graphic design work to and on occasion promoted concerts for certain Latin artists at small Orlando-area venues. As a promoter, Fernandez, through Kadaae, would contract with and pay the artists, bearing upfront

3

the costs of promoting and producing the concert, including the costs of the venue. Either the venue or a company such as Ticketmaster would handle ticket sales, and would pay Kadaae its share of the ticket revenue.

14. In early 2015, Fernandez formed Kadaae Entertainment and, through the Kadaae Companies, he began seeking money from investors, representing that the money would be used to fund major concert events. Fernandez promoted the investment personally, through word of mouth, and through sales agents that solicited investors. Fernandez ultimately raised for the Kadaae Companies approximately $20.7 million from at least 56 investors located in several states.

15. Denizard was an early investor in the Kadaae Companies. In early 2015, Denizard quit his full-time job as a timeshare telemarketer, formed AOTG, and began raising money for investment in the Kadaae Companies' concerts. Like Fernandez, Denizard promoted the investment personally, through word of mouth, and through sales agents that solicited investors. Denizard ultimately raised approximately $10.4 million from at least 78 investors residing in several states.

16. In most cases, investors signed "Investor Agreements" with Kadaae or AOTG, which stated that the investment was for a "Business Venture" involving "music entertainment events." The Investor Agreements were usually for two-to-three-month terms, after which investors would receive their principal back plus a purported return on the investment. Many of the Kadaae investor agreements, and all of the AOTG agreements, specified that the investor would receive a specific return on investment, ranging from 20% to 60%, at the end of the term. The agreements provided that at the end of the term, investors could roll over their

investment into another entertainment event, and many investors elected this option in lieu of cashing out. Under the agreements, the Kadaae Companies and AOTG were solely responsible for using the money to further the venture; the investor's only obligation was to provide funds.

17. A few Kadaae investors signed "Concert Partnership Agreements," whereby Kadaae and the investor would supposedly become partners in a Florida general partnership whose business would be "the production of and participation in concert and other entertainment events." The Concert Partnership Agreements set forth the amounts Kadaae and the investor would each make in "capital contributions," the name of the specific artist and performance venue involved, and the dollar amount of "net profit" the investor could expect to receive from the venture. Although these agreements were described as "partnership agreements," they stated the investor "shall have no responsibility to carry out the business of the Partnership," and investors who signed the "partnership" agreements had no actual role in the business venture. None of the purported general partnerships were registered with the Florida Secretary of State.

18. The Investor Agreements and Concert Partnership Agreements are investment contracts, and therefore securities, within the meaning of the Securities Act and the Exchange Act.

**B. The Misrepresentations**

19. Defendants made, both orally and in writing, material misrepresentations to investors and prospective investors regarding the Kadaae Companies' business and the use of investor funds. These misrepresentations were all designed to give investors the impression

5

that the Kadaae Companies would use investor money to produce and promote concerts for major recording artists such as Enrique Iglesias, Kanye West, and Pitbull:

    a.    The Investor Agreements claimed that investor funds would be used for a "Business Venture" involving music entertainment events.

    b.    In many cases, Defendants, or a sales agent, would separately provide investors with the names of the artist and specific concert in which they would be investing.

    c.    Many of the Kadaae, and all of the AOTG, Investor Agreements set forth specific returns investors could expect to receive on the investment.

    d.    The Concert Partnership Agreements stated that "partnership capital" would be used for the concert at the venue set forth in the agreement, and that investors would receive the stated return on investment.

    e.    Fernandez distributed a marketing brochure to various investors that touted Kadaae Entertainment's control of production of a 2016 event called the Art of Rap Tour. According to the brochure, the tour would consist of 21 shows across the United States featuring major artists such as Jay-Z, Snoop Dogg, and Kendrick Lamar that would generate a gross profit of over $20 million.

    f.    Fernandez and Denizard also provided investors with free tickets for the concerts they were supposedly investing in, telling one investor that Kadaae got the "free tickets" as part of its work in putting together the shows.

20.    By way of example, in October 2015, Defendants met with an individual identified herein as "Investor 1." Defendants represented they had years of experience in the concert business, and that if Investor 1 invested in concerts they were promoting, he could

expect returns of 30% to 50% within 60 to 90 days. Fernandez claimed he worked closely with the concert artists. At the meeting, Defendants showed Investor 1 documents about the music industry and a poster of them posing with a well-known Mexican rock band, claiming they had organized concerts for that band. Defendants represented that they were promoting two other concerts, for Ricky Martin and Alejandro Fernandez. Defendants said that Investor 1 could expect a 40% return on investment in a matter of months if they invested in these concerts.

21. As Defendants knew, these representations were false. In fact, although the Kadaae Companies promoted a handful of concert events for a few lesser known artists at small Orlando-area venues, they did not produce concerts for any of the major recording artists identified to investors and they had no involvement in the Art of Rap Tour. The company responsible for putting on these events never had any business relationship with nor made payments to the Kadaae Companies. Moreover, Defendants did not obtain the concert tickets they gave to investors from their association with the concert, but rather by buying them from ticket sellers such as Ticketmaster and StubHub.

22. Investor money was not spent on the concerts as represented. Of the $20.7 million in investor funds deposited into the Kadaae Companies' accounts (including $1.9 million received from AOTG), only about $311,000 was spent on concert or related expenses, and no more than about $327,000 in concert-related revenues were generated. Fernandez misappropriated at least $1.65 million of investors' funds. Fernandez also caused approximately $2.2 million to be paid to AOTG. He used the bulk of the remaining funds to make payments to investors in Ponzi scheme fashion and to pay commissions to sales agents

23. Of the $10.4 million in investor funds that came into AOTG accounts, AOTG only transmitted approximately $1.9 million to the Kadaae Companies, ostensibly to fund the concert events, and received back approximately $2.2 million. Denizard misappropriated at least $1.24 million of investors' funds. Denizard used at least $6.58 million of the balance of the funds to make payments to investors in Ponzi scheme fashion and to pay commissions to sales agents.

V. **CLAIMS FOR RELIEF**

**Count 1 – Violation of Section 5(a) and 5(c) of the Securities Act**

24. The Commission adopts by reference paragraphs 1 through 23 of this Complaint.

25. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions described in this Complaint issued by Kadaae, Kadaae Entertainment, and AOTG and no exemption from registration existed with respect to these securities and transactions.

26. Defendants, directly and indirectly:

  (a) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

  (b) carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

  (c) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the Commission as to such securities.

27. By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

### Count 2 – Violation of Section 17(a)(1) of the Securities Act

28. The Commission adopts by reference paragraphs 1 through 23 of this Complaint.

29. Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or recklessly, directly or indirectly employed devices, schemes, or artifices to defraud.

30. By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

### Count 3 – Violation of Section 17(a)(2) of the Securities Act

31. The Commission adopts by reference paragraphs 1 through 23 of this Complaint.

32. Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

33.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

### Count 4 – Violation of Section 17(a)(3) of the Securities Act

34.     The Commission adopts by reference paragraphs 1 through 23 of this Complaint.

35.     Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

36.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

### Count 5 – Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

37.     The Commission adopts by reference paragraphs 1 through 23 of this Complaint.

38.     Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of any security.

39.     By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

**Count 6 – Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act**

40. The Commission adopts by reference paragraphs 1 through 23 of this Complaint.

41. Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

42. By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

**Count 7 – Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act**

43. The Commission adopts by reference paragraphs 1 through 23 of this Complaint.

44. Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

45. By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c).

## VI.     RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find that Defendants committed the violations of the federal securities laws alleged in this complaint and.

### A.     Permanent Injunction

Issue a Permanent Injunction, enjoining Defendants, their agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with them, and each of them, from violating Sections 5 and 17(a) of the Securities Act, 15 U.S.C. §§ 77e and 77q(a), and Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.

### B.     Disgorgement

Issue an Order directing Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in this Complaint.

### C.     Penalty

Issue an Order directing Defendants to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

### D.     Further Relief

Grant such other and further relief as may be necessary and appropriate.

E.   **Retention of Jurisdiction**

Retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

VII.   **DEMAND FOR JURY TRIAL**

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

September 25, 2019                                        Respectfully submitted,

                                                  By:   s/Andrew O. Schiff
                                                        Andrew O. Schiff, Trial Counsel
                                                        Regional Trial Counsel
                                                        Direct Dial: (305) 982-6390
                                                        Fax: (305) 536-4154
                                                        schiffa@sec.gov

                                                        Shan Chang
                                                        Senior Counsel
                                                        Direct Dial: (305) 982-6319
                                                        Fax: (305) 536-4154
                                                        changsh@sec.gov

                                                        Attorneys for Plaintiff
                                                        **Securities and Exchange Commission**
                                                        801 Brickell Avenue, Suite 1800
                                                        Miami, FL 33131